**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Oasis Foot & Ankle LLC,<br><br>Plaintiff,<br><br>v.<br><br>HonorHealth, Sonoran Orthopaedic Trauma Surgeons PLLC, Foothills Orthopaedic Specialists PC, and Mallin & Seidel Orthopaedic Oncology,<br><br>Defendants. | No. CV-20-00402-PHX-DLR<br><br>**ORDER** |

Defendants HonorHealth, Sonoran Orthopaedic Trauma Surgeons PLLC ("SOTS"), Mallin & Seidel Orthopaedic Oncology ("Specialty"), and Foothills Orthopaedic Specialists PC ("Foothills") move to dismiss (Docs. 26-29) Oasis Foot & Ankle LLC's ("Oasis") complaint (Doc. 1). For the reasons stated below, the Court grants the motions.[1]

**I. Background**

Oasis is a group of podiatrists with locations in Phoenix, Deer Valley, and Tempe. (Doc. 1 ¶ 1.) In 2013, Oasis provided trauma care and consultations for lower extremities under contract with the John C. Lincoln Health Network, which merged with Scottsdale Health in 2015 to create HonorHealth. (*Id.* ¶¶ 66, 69, 77.) HonorHealth now operates three

---

[1] Oral argument is denied because the issues are adequately briefed and oral argument will not help the Court resolve the motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f); *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

of the ten Level I Trauma Centers in the Phoenix Metropolitan area. (*Id.* ¶ 51.) SOTS, Foothills, and Specialty are groups of orthopedists contracted with HonorHealth. (*Id.* ¶¶ 84, 92, 90.)

Oasis claims that, two months after HonorHealth formed, an HonorHealth executive and several SOTS doctors attended a retreat for orthopedic surgeons in Sedona "to discuss ways to bar podiatrists from treating lower-limb bone, ligament and tendon emergencies in the HonorHealth system." (*Id.* ¶¶ 98-99.) Oasis alleges that "defendants reached a collusive agreement" at the retreat "to eliminate competition from podiatrists treating or consulting on bone, ligament and tendon emergencies in the HonorHealth system." (*Id.* ¶ 100.)

After the retreat, HonorHealth's committee responsible for crafting privilege standards proposed a new "Podiatry Privileges Checklist" ("PPC"), requiring podiatrists to accrue "175 enumerated surgical procedures within the last two years" and becoming board certified before qualifying for staff privileges. (*Id.* ¶¶ 105, 117, 125.) Two SOTS doctors and one Foothills doctor helped "promulgat[e]" the new standards, which HonorHealth adopted. (*Id.* ¶ 105-06, 117.)

HonorHealth doctors told Oasis that the PPC essentially "prevented doctors of podiatric medicine from holding any office and voting on committees at HonorHealth." (*Id.* ¶ 104.) Oasis called the new standards "impossible," not only because of the sheer number of required surgeries but also because surgical privileges at HonorHealth required board certification—a "Catch-22." (*Id.* ¶¶ 110, 124-25.) Still, in April 2016, HonorHealth contracted with Oasis to "provide on-call services in the HonorHealth emergency departments," and emergency department staff "continued to consult with Oasis doctors on foot and ankle trauma." (*Id.* ¶ 102.)

Two years later, an SOTS doctor at HonorHealth "told at least one patient that doctors of podiatric medicine are 'not qualified' to perform ankle and foot surgeries while working at HonorHealth." (*Id.* ¶ 129.) That same year, an Oasis doctor responding to a consultation request at HonorHealth was "informed [he] could no longer see the consult,"

and "a surgeon from SOTS . . . took the patient to surgery." (*Id.* ¶ 135.) And in another instance, a Specialty doctor told an Oasis doctor that "all on-call doctors of podiatric medicine would have to be 'pre-approved' by Dr. Miller's (of SOTS) committee—and that 'no such approval would ever take place.'" (*Id.* ¶ 141.)

Oasis filed this action in 2020, alleging four claims. Claim 1 arises under the Sherman Act, 15 U.S.C. § 1, alleging that Defendants excluded Oasis podiatrists from providing lower-extremity trauma care at HonorHealth, which caused increased patient wait times and unnecessary amputations. (*Id.* at 24 and ¶¶ 147, 150.) Claim 2 alleges tortious interference with prospective economic relations as to SOTS, Foothills, and Specialty (collectively "the Orthopedist Defendants"). (*Id.* at 25.) Claim 3 alleges Common Law Unfair Competition against the Orthopedist Defendants. (*Id.* at 26.) And Claim 4 alleges that HonorHealth discriminated in violation of A.R.S. § 36-435. (*Id.* at 27.) HonorHealth, SOTS, and Specialty filed motions to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6), and Foothills joined the motions. (Docs. 26-29.)

**II. Legal Standard**

To avoid a Rule 12(b)(6) dismissal, a complaint must plead sufficient factual matter to present a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual content must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court accepts factual statements as true but need not credit merely conclusory statements. *Id.*

**III. Discussion**

The Sherman Act prohibits agreements that unreasonably restrain trade. *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). An antitrust plaintiff wishing to survive a Rule 12(b)(6) motion must plead "a contract, combination or conspiracy among two or more persons or distinct business entities," along with other required elements. *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1150 (9th Cir. 2019). Parallel conduct on its own cannot establish a "meeting of the minds; the plaintiff must present sufficient factual matter to suggest 'a preceding agreement.'" *Twombly*, 550 U.S. 544, 557

(2007). A conspiracy may be vertical (up and down the supply chain), horizontal (among competitors), or both—the so-called "hub-and-spoke" conspiracy. *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1185-86, 1192 (9th Cir. 2015).

Oasis pleads a classic hub-and-spoke conspiracy, alleging that "the Orthopedist Defendants acted together" and that HonorHealth conspired with the Orthopedist Defendants as a collective, not with individual Orthopedist Defendants in separate conspiracies. (Doc. 36 at 8; Doc. 1 ¶¶ 7, 24, 103, 116.) A hub-and-spoke conspiracy generally requires a horizontal conspiracy. Oasis argues that the law permits "rimless hub-and-spoke conspirac[ies]" (Doc. 44 at 3), a special class of hub-and-spoke conspiracies that do not require a horizontal conspiracy and instead require multiple, independent vertical conspiracies, *see In re Musical Instruments*, 798 F.3d at 1193 n.3 (dicta). Even if true, that is beside the point. As alleged, Oasis' particular antitrust theory depends on the existence of a horizontal conspiracy among the Orthopedist Defendants. Oasis therefore must plead sufficient factual mater to make a horizontal conspiracy facially plausible

The complaint contains the following relevant factual allegations. SOTS doctors met with an HonorHealth representative at the 2015 retreat "to discuss ways to bar podiatrists from treating lower-limb bone, ligament and tendon emergencies in the HonorHealth system" and ultimately resolved to eliminate competition from podiatrists treating or consulting on bone, ligament and tendon emergencies in the HonorHealth system. (*Id.* ¶¶ 98-100.) And after the retreat, one Foothills doctor and two SOTS doctors sat on the HonorHealth committee that "promulgated" the "Podiatry Privileges Checklist." (*Id.* 19 ¶ 117.)

Those facts do not create the reasonable inference that the three Orthopedist Defendants conspired and worked together. Oasis places only one Orthopedist Defendant at the retreat, at least one mind shy of establishing "a meeting of the minds." *Twombly*, 550 U.S. at 557. As for the defendants who sat on the committee, Oasis fails to plead factual allegations plausibly establishing the existence of "a preceding agreement" between them. *Id.*

Oasis asks this Court to consider several other allegations. (Doc. 37 at 9 (citing Doc. 1 ¶¶ 7, 24, 59, 61, 101, 149).) Those allegations reference "the Orthopedist Defendants," the "defendants," or just the "collusive agreement," but failing to allege "who, did what, to whom (or with whom), where, and when." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008). A plaintiff must do more than "offer labels and conclusions or a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

Oasis also asks the Court to consider so-called "plus factors," circumstantial factors courts use to delineate "merely possible" conspiracies from "plausible" conspiracies. *In re Musical Instruments*, 798 F.3d at 1194. Oasis argues that its allegations support three plus factors: (1) market conditions; (2) opportunity for collusion and industry gatherings; and (3) history of anticompetitive behavior. (Doc. 1 ¶¶ 7, 24, 97-101, 103, 116.) The plus factors add nothing. For market conditions, Oasis argues that HonorHealth enjoys "exclusive dominion over emergency surgeries for traumatic foot, ankle and lower limb injuries in North Phoenix and Scottsdale." (Doc. 36 at 9.) But that goes to the existence of a vertical agreement, not a horizontal agreement among the Orthopedic Defendants. Next, Oasis argues that the 2015 retreat offered an opportunity for collusion, but only one of the three Orthopedist defendants attended the retreat, hardly an opportunity to collude. (*Id.* at 9-10.) Finally, to establish a history of anticompetitive behavior, Oasis points to a 2010 statement from a Specialty orthopedist to an unnamed "third-party" and a 2015 statement from a Foothills orthopedist to an Oasis podiatrist. (*Id.* ¶ 84.) But two statements, one of them made ten years before Oasis brought its complaint, do not create a history of anticompetitive behavior. In sum, considering the well-pled factual allegations in light of the plus factors still does not make Oasis' hub-and-spoke conspiracy plausible. *In re Musical Instruments*, 798 F.3d 1194.

Oasis argues, in the alternative, that if the complaint fails to plausibly allege a Sherman Act violation, Oasis should receive leave to amend. (Doc. 36 at 21; Doc 37 at 9.) This request is denied because it ignores paragraph 3 of the Court's February 25, 2020

order discouraging motions to dismiss (Doc. 8) and Local Rule of Civil Procedure 15.1(a), both of which require a party seeking leave to amend to submit with that request a proposed amended complaint. Indeed, Oasis does not even indicate what additional facts, if any, it could allege, rendering its request for leave to amend even more deficient.

**IV. Conclusion**

Oasis has not alleged a plausible Sherman Act claim. For that reason, the Court dismisses Claim 1. With no remaining federal claim to justify the exercise of supplemental jurisdiction over Oasis' state law claims, the Court will dismiss the remaining claims. *See* 28 U.S.C. § 1367(c)(3); *Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003).

**IT IS ORDERED** that HonorHealth's, Sonoran Orthopaedic Trauma Surgeons', Foothills Orthopeadic Specialists', and Specialty Orthopaedic Surgery's motions to dismiss (Docs. 26-29) are **GRANTED**. Claim 1 is dismissed with prejudice. Claims 2, 3, and 4 are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). The Clerk of the Court is directed to terminate this case.

Dated this 23rd day of September, 2021.

Douglas L. Rayes
United States District Judge